SULLIVAN, Senior Judge
(dissenting):
The practice of this Court has been to uphold guilty pleas where an accused’s providence inquiry “indicates not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea....” United States v. Davenport, 9 MJ 364, 367 (CMA 1980), cited in United States v. Boddie, 49 MJ 310, 312 (1998). The majority holds that the plea inquiry in this case does “not objectively” support a finding “that appellant’s conduct was service discrediting”. 57 MJ at 239. I disagree.
In my view, the entire plea inquiry must be considered on this question. Appellant admitted that “at or near the Port of Silver-dale, located at Silverdale, Washington, on or about 27 June 1999, [he] unlawfully board[ed] the private boat of George and Toni Rowe, civilians.” 57 MJ at 237 n.2. He further admitted that his conduct was prejudicial to good order and discipline in the armed forces and was conduct of a nature to bring discredit upon the armed forces. (R.68)
These admissions, however, do not stand alone in the record of trial. As a factual basis for this guilty plea, appellant further admitted that he was on restriction on the day of the incident and he broke that restriction by going to the port of Silverdale. (R.42) Moreover, he stated that he was accompanied by another Marine and a 15-year-old daughter of a Chief Petty Officer at the time of the offense. (R.70) This young-girl was the key figure in three of appellant’s other charged offenses (two “no contact” orders violations and one barracks guest violation). Finally, appellant stated that he was discovered in the act of unlawful entry by the civilian owner of the boat and that a roving Marine patrol officer had to eventually resolve this matter with the civilian boat owner. (R.65) Surely, a public disorder involving a Marine (who is unlawfully off base) and a civilian which necessitated action by military police to smooth civilian and military relations fits the requirement of military disorder or service discrediting conduct. See William Winthrop, Military Law and Precedents 731 (1920 Reprint) (disorderly conduct in town). The majority leaves these important facts out in making its analysis. Facts ignored, however, do not disappear. As Aldous Huxley has said, “Facts do not cease to exist because they are ignored.” *
In addition, unlike the majority, I would answer the granted issues in this case. The granted issues (whether the boat was a place of habitation and whether appellant entered the boat) were largely questions of fact that should have been raised at the trial level. There, the Government could have put on evidence to resolve whether this sailboat was a place of habitation and whether appellant made an entry by leaning on the railing of the sailboat. Accordingly, I would reject appellant’s belated factual arguments concerning the validity of his guilty pleas. See generally United States v. Harrison, 26 MJ 474, 476 (CMA 1988) (post-trial speculation on the validity of guilty pleas should not normally be countenanced).
The boat in question was twenty-five feet long, with a cabin which was capable of being lived in, and it was inhabited at the time of the entry. Moreover, in response to a question from the military judge as to whether there was “any evidence that people were using it [the sailboat] as a place [of] habi *245 tation,” appellant answered in the affirmative after consulting with his lawyer. (R.63) No more was required for purposes of the military criminal offense of unlawful entry. See United States v. Gillin, 8 USCMA 669, 25 CMR 173 (1958). Accordingly, on this basis, I would affirm the conviction.
There is one final concern I have with the law that is being made in this case. Appellant pled guilty to unlawful entry of a sailboat. This conviction was affirmed on appeal by the Court of Criminal Appeals. Our Court granted two legal issues regarding whether the sailboat was a dwelling and whether leaning on a boat’s railing was an entry for the purposes of the crime of unlawful entry. The majority dodges these issues, yet reverses this Article 134 conviction based on an issue not raised by appellant at the trial level nor at the Court of Criminal Appeals. This issue, moreover, was not raised nor briefed nor argued at our Court.
This surprise reversal by the majority in this case is based primarily on the three-two decision of this Court in United States v. Outhier, 45 MJ 326, 331 (1996). The portion of Outhier relied upon by the majority states: “Mere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea.” Id. This holding in turn is based on the two-one decision of this Court in United States v. Terry, 21 USCMA 442, 45 CMR 216 (1972).
If one looks at Terry, one can see that the Terry case is a far different case than the instant case. In Terry, the judge merely read aloud each specification and the elements and the accused said he understood them, then the judge accepted the plea. Id. A more “bare bones” plea could not be imagined. In contrast, the transcript of the plea in the instant ease was 67 pages in length, covering multiple charges, to include appellant’s association with the 15-year old daughter of a Navy non-commissioned officer. As I have pointed out above, there was a sufficient factual basis to find that the unlawful entry guilty plea was supported in the record with regard to the service discrediting element.

 Proper Studies (1927).